## CONSOLIDATED RAIL CORPORATION, Appellee

v.

## DELAWARE RIVER PORT AUTHORITY, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 28, 2003.

Filed July 1, 2005.

Reargument Denied Sept. 1, 2005.

---

**3.** I also reject the majority's assertion that a public policy against the discovery of child death review reports can be found in Pennsylvania Rule of Evidence 407, which states that evidence of subsequent remedial measures are "not admissible to prove that the party who took the measures was negligent or engaged in culpable conduct...." *See* Pa. R.Evid. 407. Our Rules of Civil Procedure expressly provide not only that "a party may obtain discovery regarding any matter not privileged, which is relevant to the subject matter involved in the pending action ...," but also that "[i]t is not ground for objection [to discovery] that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to admissible evidence." Pa.R.C.P. 4003.1(a), (b). Thus, the majority's attempt to use an evidentiary rule regarding the *admissibility* of evidence to discern a public policy against *discoverability* of evidence is simply misplaced.

**4.** That said, if, in fact, the agencies neglect their public duty and the General Assembly concludes that it is necessary to shroud the written results of child death reviews in a veil of confidentiality in order to make DPW's audit power more effective, then the General Assembly can amend the CPSL to provide for such confidentiality.

Steven Pachman, Philadelphia, for appellant.

Jonathan F. Ball, Philadelphia, for appellee.

Before: DEL SOLE, P.J., HUDOCK and TODD, JJ.

DEL SOLE, P.J.:

¶ 1 Our Supreme Court has remanded this matter, instructing this Court to address certain issues. First, we must determine whether a declarant in a witness

protection program is unavailable for purposes of Pa.R.E. 804. Secondly, we must interpret a term of the contract entered into by the parties named in this action.

¶ 2 A brief history is in order. In 1993, Consolidated Rail Corporation ("Conrail") entered into an Intermodal Switching Letter Agreement ("I.S.L. Agreement") with Delaware River Port Authority ("Appellant"). The I.S.L. Agreement stated that Appellant would provide intermodal services at its regional intermodal transfer facility, known as Ameriport. These services consisted of lifting containers on to and off of rail cars and the subsequent storage of such containers until they were retrieved from the facility. Sometime thereafter, six cargo containers that had been removed from Conrail rail cars and placed in storage were stolen; the containers were removed from the property complete with their inventory. In addition, another container had part of its contents stolen and yet another container and its contents were damaged. Conrail paid the beneficial owners for their losses and then sought indemnity from Appellant for these sums, per the terms of their agreement. Appellant refused.

¶ 3 Conrail brought an action for breach of contract. During the non-jury trial, Conrail offered, and the trial court accepted, a transcript of testimony of Mr. Angelucci to establish the contents of the containers in question. Mr. Angelucci had testified to the contents of these containers in a criminal trial concerning their theft. In exchange for testifying for the prosecution, Mr. Angelucci was placed in a witness protection program.

¶ 4 Judgment was ultimately entered against Appellant for an amount in excess of $700,000. Appellant filed post-trial motions, upon which the trial court never ruled. Following Conrail's praecipe for entry of judgment, judgment was entered and Appellant filed a timely appeal. This Court vacated that judgment in part and affirmed in part. Appellant filed a Petition for Allowance of Appeal with the Supreme Court, which was granted in part. The Supreme Court vacated this Court's judgment and remanded for consideration of the following two issues:

(1) Whether a hearsay declarant is "unavailable" for purposes of Pa.R.E. 804, merely by virtue of his membership in a witness protection program, and if not, whether proof sufficient to otherwise satisfy the definition of "unavailability" was, in fact, offered by the proponent of that declarant's testimony in this case? [1]

(2) Whether the terms of the parties' agreement should be interpreted to require indemnification under the instant circumstances, where the loss allegedly occurred during storage?

Supreme Court Order, 12/28/04.

¶ 5 Pennsylvania Rule of Evidence 804, an exception to the rule against hearsay, permits the introduction of prior testimony of a declarant when that declarant is unavailable. Sub-section (a)(5) of this Rule provides that a declarant is unavailable if the declarant "is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means." Pa.R.E. 804(a)(5). Thus, a declarant will not be deemed to be unavailable upon mere assertion of such by the proponent; rather, the proponent must exhibit the efforts taken to procure the declarant's attendance.

---

**1.** Conrail argues on many grounds that Appellant waived this issue. Upon our review of the record, we find this issue properly preserved, and so we shall address it.

¶ 6 With this in mind, we address whether participation in a witness protection program alone renders a declarant unavailable as a matter of law. In *Commonwealth v. Lebo*, 795 A.2d 987 (Pa.Super.2002), this Court was faced with a similar question. Lebo was convicted of multiple charges related to explicit photography of underage models. At trial, the Commonwealth admitted the preliminary hearing testimony of a witness, who, at the time of trial, was participating in a boot camp program in South Carolina. On appeal, Lebo argued that the trial court erred in finding the witness unavailable and admitting her testimony from the preliminary hearing into evidence. Specifically, Lebo argued that the Commonwealth did not demonstrate a good faith effort to locate and produce the witness. This Court agreed, finding that the lack of evidence to show that the Commonwealth did anything to procure the witness's attendance precluded a finding of unavailability as per Rule 804.

¶ 7 Thus, in *Lebo*, we found that proof of the efforts expended by the proponent to secure the declarant's presence was necessary to the qualification as "unavailable." We find the situation before us analogous, and so we reach a similar conclusion: a declarant is not unavailable per Rule 804 solely by virtue of participation in a witness protection program; the proponent of the statement must establish the reasonable measures taken to procure the declarant's attendance. In so holding, we again refuse to read the phrase, "the proponent of a statement has been unable to procure the declarant's attendance ... by process or other reasonable means" out of the

Rule. We do not speculate as to what efforts would satisfy this requirement. We simply hold that the mere assertion of such participation is not sufficient to establish a declarant's unavailability.

¶ 8 In reaching this conclusion, we are cognizant of the fact that *Lebo* involved a boot camp program; however, other courts have addressed the unavailability requirement in the context of witness protection programs. For example, in interpreting its equivalent to Pa.R.E. 804,[2] the Florida District Court of Appeals held that the fact that a declarant in a witness protection program at the time of trial did not divest the proponent of its burden to establish that it had taken reasonable steps to procure the declarant's attendance before characterizing him as unavailable by reason of his participation in that program. *Spicer v. Metropolitan Dade County*, 458 So.2d 792 (Fla.Dist.Ct.App.1984).

¶ 9 The record before us contains no evidence to prove that Conrail took any steps to procure the witness's appearance; rather, it appears that Conrail relied solely on Mr. Angelucci's membership in a witness protection program as proof of unavailability. As such, in the absence of evidence of measures taken to reach this witness, the trial court erred in finding Mr. Angelucci unavailable per Rule 804, and therefore erred in admitting the testimony.[3]

¶ 10 Proceeding to the second issue, we examine whether the contract between the parties required Appellant to indemnify Conrail for losses that occurred during storage. Contract interpretation is

---

2. This provision defines the unavailability as when the declarant "is absent from the hearing, and the proponent of a statement has been unable to procure the declarant's attendance or testimony by process or other reasonable means." FLA. STAT. ANN. § 90.804(1)(e).

3. The trial court admitted Mr. Angelucci's testimony as a statement against interest per Pa.R.E. 804(b)(3), Trial Court Opinion, 6/11/01, at 5, which, as a threshold matter, requires a finding of unavailability of the declarant.

a question of law and as such, our review is plenary. *Liddle v. Scholze*, 768 A.2d 1183 (Pa.Super.2001).

¶ 11 The I.S.L. Agreement contains two paragraphs that address indemnification. Paragraph 7 states:

As between the Parties hereto, [Appellant] shall be responsible to Conrail for all loss of or damage to railroad cars in the account or possession of Conrail, or their contents, while such cars are in the RITF, even where such loss or damage is caused by a third party, except to the extent such loss or damage is caused by the negligent acts or omissions of Conrail or of Conrail's officers, agents, servants or employees.

I.S.L. Agreement at 3. Paragraph 22 states:

[Appellant] shall release, indemnify, protect, save harmless and defend Conrail and its officers, agents, servants and employees from and against any liability, claim, loss, damage, cost and expense, including reasonable legal expense and reasonable attorneys' fees ... other than damage to railroad cars and their contents governed by Paragraphs 7 and 8 hereof, arising out of the operation or maintenance of the RITF, except to the extent that such damages are caused by the actions of Conrail, its officers, agents, servants or employees.

I.S.L. Agreement at 8.

 ¶ 12 Considering these terms, we find that Appellant owes Conrail indemnification for the loss incurred while the containers were in storage. Indemnity agreements are to be narrowly interpreted in light of the parties' intentions as evidenced by the entire contract. *Fox Park Corp. v. James Leasing Corp.*, 433 Pa.Super. 505, 641 A.2d 315 (1994). The contract in question here is for intermodal services, which the trial court found entails "lifting on and lifting off containers and subsequent storage until a truck picks up the containers." Trial Court Opinion, 6/11/01, at 1. In reviewing the decision of a trial court, this Court defers to the factual findings of that court, *Fox Park* 641 A.2d at 317, and so we accept this definition. Given that part of the intermodal services is the temporary storage of containers, we find it unreasonable to conclude that the parties intended the right of indemnification to extend to the containers and their contents only while they were physically joined to a rail car. Moreover, when interpreting the scope of an indemnification clause, this Court must consider the four corners of the agreement. *Deskiewicz v. Zenith Radio Corp.*, 385 Pa.Super. 374, 561 A.2d 33 (1989). The contract as a whole addresses the movement of rail cars in and out of the Ameriport facility and the movement of containers on to and from rail cars and their storage; it is clear that the storage of the containers pending their further transfer was clearly contemplated by the parties. Accordingly, we conclude that the trial court did not err in finding that Appellant must indemnify Conrail for the losses at issue. However, while Conrail is entitled to indemnification for the losses at issue, the amount was dependent on the improperly admitted testimony, and so we must vacate the judgment of the trial court and remand for a new trial on damages.

¶ 13 Judgment vacated. Case remanded. Jurisdiction relinquished.