J. A29005/16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

J.M.S.                                        :        IN THE SUPERIOR COURT OF
                                              :              PENNSYLVANIA
                                              :
               v.                             :
                                              :
J.M.S.,                                       :
               APPELLANT                      :
                                              :
                                              :        No. 368 WDA 2016

Appeal from the Order February 11, 2016
In the Court of Common Pleas of Washington County
Civil Division at No(s): No. 2013-2465

BEFORE: DUBOW, J., MOULTON, J., and MUSMANNO, J.

MEMORANDUM BY DUBOW, J.:                      **FILED JANUARY 12, 2017**

Appellant, J.M.S. ("Father"), appeals from the February 11, 2016

Order entered in the Court of Common Pleas of Washington County which

granted the Protection from Abuse ("PFA") Petition filed by Appellee, J.M.S.

("Mother"), and restricted Father's contact with Mother and their daughter,

J.M.S. ("Child"). Upon careful review, we affirm.

The trial court summarized the factual and procedural history as

follows:

> This matter initially came before the trial court when it received
> an *ex parte* report from the Washington County Children and
> Youth Services, hereinafter "the Agency." The Agency had
> received a referral from its sister Child Protective Services
> Agency in Morgantown, West Virginia, after receiving a report
> from the Morgantown Police that Father had been witnessed
> sexually molesting his daughter[.] Since Father and Mother and
> [Child] were all residents of Washington County, Pennsylvania,
> the matter was referred to the Washington County Agency. As

was reported to the trial court, the parties' adult son, after being involved in a horrific motorcycle accident, was being treated in the intensive care unit (ICU) of Ruby Memorial Hospital in Morgantown, West Virginia. While Father was visiting the son in the ICU along with [] then seven-year-old [Child], two medical professionals witnessed Father [rubbing Child in between her legs, with his hand and fingers touching and rubbing the outside of her panties over her vagina]. The witnesses immediately reported the matter to hospital administration who reported it to the Morgantown Police. The Morgantown Police then made a referral to the local Child Protective Services Agency, who then made a referral to the Washington County Agency. The Morgantown Police also issued a "no contact" order restricting Father from contact with [Child].

The Agency then contacted the trial court, who was, at that time, the presiding Juvenile Judge for Dependency. At the time of the report, Mother had an active Protection from Abuse (PFA) order restricting Father from contact with her. The parties also had a custody order regarding the custody and visitation of Child. Since there were no allegations that Mother was not a fit and willing placement resource, the trial court, *sua sponte*, decided to protect [Child] by restricting Father's contact with [Child] via the existing custody order and the PFA order. In the spirit of preserving judicial resources, this was done as an alternative to the commencement of a dependency action and the issuance [of] a shelter order. The PFA order was dated June 14, 2012, docketed at No. 2011-4549.

A hearing was held on the PFA petition on December 12, 2012, at which time the two ICU nurses appeared and testified that they had witnessed Father sexually assaulting his daughter. Meanwhile, Father had filed an appeal to the Superior Court of Pennsylvania, challenging the Court's jurisdiction and authority to act *sua sponte*, since there had not been a PFA petition filed or any motion to amend the existing PFA order to include [Child] as a party. The Superior Court agreed with Father, and on April 30, 2013, entered an order at 1057 WDA 2012, vacating the PFA order of June 14, 2012, and relinquishing jurisdiction.

Upon receipt of the Superior Court's order of April 30, 2013, Mother filed a new PFA petition on behalf of [Child], at the above-captioned term and number, regarding the same allegations of sexual abuse which occurred on June 11, 2012.

The trial court granted a temporary PFA order on May 1, 2013, and scheduled a hearing for May 13, 2013.

On May 13, 2013, Father was represented by the law firm of Christopher Blackwell & Associates, which had represented him during the proceedings on December 12, 2012. Attorney Blackwell's associate, diRicci Horwatt Getty, Esquire appeared at the May 13th hearing on Father's behalf. On that date, the trial court was conducting hearings on the instant case, the PFA petition regarding [Child], as well as a separate PFA petition Mother had filed on her own behalf against Father, filed on May 2, 2013.

At the hearing, Father's attorney first requested the trial court's recusal, on the grounds that the trial court's prior PFA order dated December 21, 2012, had been vacated by the Superior Court on procedural grounds, and because the trial court had issued an order securing the testimony of the out-of-state witnesses. Father's counsel did not request the trial court's recusal with respect to Mother's PFA petition filed against Father on her own behalf, only the petition involving [Child]. Father's attorney made no allegations of any contentious or personal history between Father and the trial court. The trial court denied the request for recusal and proceeded to hear both cases, beginning with the case of Mother's request for a protective order for herself. After hearing the testimony of the allegations of abuse by Father against Mother, the trial court entered a protective order restricting Father from contact with Mother.

On May 13, 2013, the trial court then heard testimony regarding the PFA petition filed on behalf of [Child]. Mother testified to her knowledge of the events leading up to the incident. Mother also testified of her concern for [Child]'s safety which compelled her to file the instant PFA petition on May [1], 2013, the day following the Superior Court's order vacating the prior protective order. Although Father had offered testimony in defense of Mother's PFA petition, he offered no testimony with respect to the PFA petition arising out of the sexual abuse allegations regarding [Child].

Mother's counsel then offered the transcribed testimony of the December 21, 2012 hearing, during which the two ICU nurses from Ruby Memorial Hospital in West Virginia had appeared and testified that Father had sexually assaulted [Child]. Although

the two witnesses had been thoroughly cross[-]examined by defense counsel at the prior proceeding, Father's counsel objected to the introduction of the prior testimony. The Court deferred ruling on the objection but rescheduled the hearing to afford Mother's counsel the opportunity to again secure the appearance of the two out-of-state witnesses, or to demonstrate their unavailability under Rule 804 of the Pennsylvania Rules of Evidence. The hearing was then rescheduled for June 7, 2013. By order dated June 7, 2013, the trial court rescheduled the hearing at the request of Father's current attorney, Ronald T. Conway, Esquire, and the matter was set for August 14, 2013. Attorney Conway then presented a consent motion to the trial court requesting that the matter be continued beyond September 13, 2013. The trial court then signed a consent order rescheduling the hearing for January 21, 2014.

At the hearing on January 21, 2014, the court heard testimony from Mother again, regarding her knowledge of the events which caused her to file the PFA on behalf of [Child]. Father did not testify on his own behalf, but offered the testimony of the visitation supervisor from Try Again Homes, a local social service provider regarding Father's supervised visits with [Child].

On January 21, 2014, the [eyewitnesses] to Father's sexual assault of [Child] again did not appear, but Mother's counsel offered evidence of his efforts to secure the appearance of the out-of-state witnesses, including proof of the service of subpoena's [sic] and certified mail receipts. Mother's counsel again moved for the admission of their prior testimony, via the transcript of the proceeding on December 21, 2012. Father's counsel again objected to the introduction of the transcript, but asked to postpone the hearing again for the opportunity to brief the issue of the admissibility of the witnesses' prior testimony. The trial court agreed and entered an order setting a briefing schedule.

After receiving and reviewing briefs from Father's counsel and Mother's counsel, on July 21, 2014, the trial court filed its order and opinion granting the motion to allow the prior testimony of the two ICU nurses from December 12, 2012, and overruling Father's objection to the introduction of the prior testimony into evidence. The trial court further ordered that a hearing be scheduled for the November 6, 2014, to consider any further evidence to be offered by the parties.

On November 6, 2014, Father's counsel presented another petition to continue the hearing on the PFA petition and other custody matters. With the consent of Mother's counsel, the trial court again continued the proceedings and rescheduled the matter for February 27, 2015. The order further provided that the temporary PFA and the supervised custody provisions for Father would remain in effect. However, due to a change in the trial court's calendar, the hearing set for February 27, 2015 had to be rescheduled until April 29, 2015.

On April 23, 2015, Father's counsel presented another petition to continue the PFA hearing. With the consent of Mother's counsel, the trial court rescheduled the hearing for July 9, 2015.

At no time during the pendency of these proceedings, while Father was requesting postponements of the final hearing, did Father object to the continuation of the temporary PFA and its restrictions of contact between Father and [Child]. Likewise, Mother did not object, since [Child] continued to be protected by the temporary PFA order, and the trial court agreed. During the entire time from the initial filing of the PFA petition at issue on May 1, 2013, despite the evidence of his sexual abuse, Father has been afforded supervised visits with his daughter. During this time, Father also presented several motions for special supervised visitation with [Child] for holidays and birthday parties, which were usually resolved by consent order.

On July 9, 2015, the time ultimately scheduled for the final hearing, Father and his counsel appeared and indicated on the record that Father wished to offer no additional testimony. Likewise, Mother offered no additional testimony. Father then requested that the trial court delay its decision, and permit him at least thirty days to submit an additional brief for the trial court's consideration. In doing so, Father, on the record, waived his right to an immediate decision. There being no objection from Mother, the trial court granted Father's request. After careful review of the file and the transcripts and the briefs of counsel, the trial court entered the final PFA order on February 11, 2016, restricting Father from unsupervised contact with [Child].

Trial Court Opinion, filed 6/30/16, at 1-7.

Father filed a timely Notice of Appeal. Both the trial court and Father complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Did the Lower Court commit [an] error of law or abuse of discretion by denying a recusal request made at a hearing occurring on May 13, 2013?

2. Did the Lower Court commit [an] error of law or abuse of discretion by allowing for the admission of prior testimony by non-party, out-of-state witnesses under Rule 804 of the Pennsylvania Rules of Evidence?

3. Did the Lower Court commit [an] error of law or abuse of discretion by issuing a final protection from abuse order seven (7) months after a hearing on the merits of the petition on July 9, 2015?

4. Did the Lower Court commit [an] error of law or abuse of discretion by issuing a final protection from abuse order on February 11, 2015, and as a prerequisite, finding that the allegations of abuse occurred by a preponderance of the evidence?

5. Did the Lower Court commit [an] error of law or abuse of discretion in citing, as the only other grounds for its final protection from abuse order of February 11, 2016, a lack of any assumption of responsibility by the [Father] and a history of abusive and threatening behavior involving the [Mother]?

Father's Brief at 7.

Father's first claim of error is that the trial court abused its discretion when it failed to recuse itself from the PFA proceedings. Father's Brief at 18. Father argues that the trial court's *sua sponte* issuance of a PFA order against Father for the same set of facts at a previous hearing and *sua sponte*

- 6 -

issuance of an order to secure out-of-state witnesses at a prior hearing creates an appearance of impartiality. *Id.* at 18. We disagree.

Our review of a trial court's denial of a motion to recuse is "exceptionally deferential." *In re A.D.*, 93 A.3d 888, 892 (Pa. Super. 2014) (citation omitted). This Court "recognize[s] that our trial judges are honorable, fair and competent, and although we employ an abuse of discretion standard, we do so recognizing that the judge himself is best qualified to gauge his ability to preside impartially." *Id.* (internal quotations and citation omitted).

The party seeking recusal "must satisfy the burden to produce evidence establishing bias, prejudice or unfairness which raises a substantial doubt as to the jurist's ability to preside impartially." *Id.* (internal quotations and citation omitted). This Court has held that "a mere recitation of unfavorable rulings against an attorney does not satisfy the burden of proving judicial bias, prejudice or unfairness." *Ware v. U.S. Fidelity & Guar. Co.*, 577 A.2d 902, 904 (Pa. Super. 1990). Rather, "[a] party seeking recusal must assert specific grounds in support of the recusal motion before the trial judge has issued a ruling on the substantive matter before him or her." *Id.* at 905.

The trial court opines that Father's request for recusal was a "bald attempt at forum shopping" and that Father "made no specific allegations of bias[.]" Trial Court Opinion, dated 6/29/16, at 14. In fact, "when the trial

court asked Father's counsel if she was alleging that by issuance of an order or subpoena for their appearance, the court somehow affected the witnesses' testimony, counsel replied, 'I don't know – they would testify to what they would testify to.'" Trial Ct. Op. at 14. A review of the record supports the trial court's conclusions. Accordingly, we find no abuse of discretion.

Father's second claim of error is that the trial court abused its discretion when it allowed the admission of prior testimony by non-party, out-of-state witnesses under Pa.R.E. 804. Father's Brief at 24. Specifically, the trial court admitted the prior testimony of two nurses who were eyewitnesses to the sexual abuse allegations against Father.

It is well settled that the "admissibility of evidence is a matter for the discretion of the trial court and a ruling thereon will be reversed on appeal only upon a showing that the trial court committed an abuse of discretion." **Commonwealth v. Sherwood**, 982 A.2d 483, 495 (Pa. 2009). Further, "[a]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." **Id.** (quotation marks and citation omitted).

Pa.R.E. 804 governs the admissibility of prior testimony as an exception to the prohibition against hearsay and states, in relevant part:

**(b) The Exceptions.** The following are not excluded by the rule against hearsay if the declarant is unavailable as a witness:

(1) *Former Testimony.* Testimony that:

> (A) was given as a witness at a trial, hearing, or lawful deposition, whether given during the current proceeding or a different one; and

> (B) is now offered against a party who had--or, in a civil case, whose predecessor in interest had--an opportunity and similar motive to develop it by direct, cross-, or redirect examination.

Pa.R.E. 804(b). Rule 804 provides that a declarant is considered to be unavailable as a witness if the declarant, *inter alia*, "is absent from the trial or hearing and the statement's proponent has not been able, by process or other **reasonable** means, to procure . . . the declarant's attendance[.]" Pa.R.E. 804(a)(5) (emphasis added).

The trial court opined, "the prior hearing involved the identical parties and the identical issues. The two witnesses in question appeared on December 21, 2012, and testified as [eyewitnesses] to Father's sexual assault of [Child]. At that hearing, the two witnesses were subject to thorough and extensive cross-examination by Father's counsel." Trial Ct. Op. at 15. A review of the record supports these conclusions. Consequently, the remaining issue in dispute is whether the trial court properly determined that the witnesses were "unavailable."

Father avers that Mother failed to introduce any evidence of the efforts made to procure the witnesses' attendance pursuant to Pa.R.E. 804(a)(5),

and therefore the trial court abused its discretion when it declared the witnesses unavailable. Father's Brief at 28-29.

This Court has held that "proof of the efforts expended by the proponent to secure the declarant's presence [is] necessary to the qualification as 'unavailable.'" **Consolidated Rail Corp. v. Delaware River Port Authority**, 880 A.2d 628, 631 (Pa. Super. 2005). However, "[w]e do not speculate as to what efforts would satisfy this requirement. We simply hold that the mere assertion of [unavailability] is not sufficient to establish a declarant's unavailability." **Id.**

In this case, Mother's attorney informed the trial court that he issued one subpoena for each witness via certified mail and one "green card[,]" or return receipt, came back to him. N.T. Hearing, 1/21/14, at 22. Mother's attorney did not baldly assert without support that the witnesses were unavailable, but rather informed the court of the efforts that he put forth to secure the witnesses' presence. The trial court found that Mother made "reasonable" efforts to secure the witnesses attendance but had been unsuccessful. Trial Ct. Op. at 18.

Because Mother's attorney offered evidence of his efforts to secure the witnesses' attendance, we find that the trial court did not abuse its discretion when it declared the witnesses unavailable and admitted their former testimony. **See Consolidated Rail Corp., supra**; **see also** Pa.R.E. 804.

Father's third issue on appeal is whether the trial court abused its discretion by issuing a final PFA order six months following the submission of Post-Trial Briefs and seven months after a hearing on the merits of the PFA Petition on July 9, 2015. Father's Brief at 36. Father avers that the trial court violated Pa.R.C.P. No. 1038, which states that in a non-jury trial, the trial judge "shall render a decision within seven days after the conclusion of the trial except in protracted cases or cases of extraordinary complexity." Pa.R.C.P. No. 1038(c). This issue lacks merit.

In his Brief, Father concedes that "[o]n July 9, 2015, a hearing would occur whereby [Father] would request that prior to issuing a final decision and order, he be permitted to submit a post-trial brief for consideration and in doing so, waive the right to an immediate decision." Father's Brief at 14. A review of the record reveals that both Father and Mother agreed to waive an immediate decision for the opportunity to present Post-Trial Briefs. N.T. Hearing, 7/9/15, at 4-5. Father argues that "[i]n accordance with the intentions and directives of Rule 1038" the trial court should have issued a decision within seven days following the submission of the briefs, but he cites no other authority to support this position. Father's Brief at 38; **See** Pa.R.C.P. No. 1038.

Additionally, Rule 1038 provides an exception to the time requirements for cases that are protracted. Pa.R.C.P. No. 1038(c). This

case spanned a period of approximately three years, partly due to Father's requests for continuances, and certainly qualifies as "protracted."

Father requested multiple continuances that caused the PFA proceeding to be protracted and Father agreed to waive an immediate decision after the PFA hearing. Accordingly, this issue lacks merit and we find no abuse of discretion.

Father's fourth issue on appeal is that the trial court abused its discretion by issuing a final PFA order solely based on testimony transcribed from a prior hearing on December 21, 2012. Father's Brief at 39. This claim also merits no relief.

Father first re-argues that the trial court improperly admitted the prior testimony pursuant to Pa.R.E. 804. We addressed this argument **supra**, and find no abuse of discretion.

Father next argues that the transcribed testimony from a prior hearing was insufficient to support a finding of abuse, and therefore insufficient to grant the PFA Order against Father. Father's Brief at 43.

In any PFA action, "we review the trial court's legal conclusions for an error of law or abuse of discretion." **Mescanti v. Mescanti**, 956 A.2d 1017, 1019 (Pa. Super. 2008). In particular, when a claim is presented on appeal that the evidence is insufficient to support a PFA Order, we must "view the evidence in the light most favorable to the verdict winner, granting her the benefit of all reasonable inferences." **Id.** at 1020 (quotation and citation

omitted). This Court must determine whether the evidence was "sufficient to sustain the [trial] court's conclusions by a preponderance of the evidence. The preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly[.]" ***Id.*** (quotation marks and citation omitted).

The PFA Act defines "abuse," in relevant part, as follows:

**"Abuse."** The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:

(1) Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

23 Pa.C.S. § 6102(a).

The trial court described the testimony in question as follows:

As demonstrated by the record, the two eyewitnesses to Father's sexual assault of his daughter were independent, disinterested parties. Both witnesses were registered nurses working in the ICU at Ruby Memorial Hospital when they witnessed the assault. The testimony of both witnesses was unequivocal that Father was rubbing the vagina of [Child], then [seven] years old, [above her clothing] while she was straddled across his lap. The witnesses corroborated each other's testimony. Both of the witnesses acknowledged that the conduct they saw Father engaged in constituted a "reportable event" of child abuse, and that they were required to report the sexual assault as mandatory reporters. This testimony would be sufficient to convict Father of the crime of indecent assault of a child, as proof beyond a reasonable doubt . . . This testimony of Father's indecent assault would certainly be sufficient for the trial court to make a finding of abuse under the PFA Act, proven by a preponderance of the evidence.

Trial Ct. Op. at 21. We agree.

Indecent assault is defined, in relevant part, as indecent contact with a child less than thirteen years of age. 18 Pa.C.S. § 3126(a)(7). Indecent contact is "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S. § 3101. Further, this Court has held that "skin to skin" contact is not necessary to sustain a conviction for indecent assault. *Commonwealth v. Provenzano*, 50 A.3d 148, 153 (Pa. Super. 2012). The testimony of both witnesses – that they observed Father rubbing Child's vagina above her clothing while she sat on his lap – establishes by a preponderance of the evidence that Father indecently assaulted Child. "Pursuant to [S]ection 6102(a)(1) of the PFA Act [], indecent assault is an act of abuse, for protection against which a PFA order may be entered." *Thompson v. Thompson*, 963 A.2d 474, 479 (Pa. Super. 2008). Accordingly, we find no abuse of discretion.

Father's last issue on appeal is whether the trial court abused its discretion "in citing, as an additional incident of abuse within final protection from abuse order of February 11, 2016, a lack of assumption of responsibility by [Father] and a history of abusive and threatening behavior involving [Mother.]" Father's Brief at 45. Father argues that the assertions are unsupported by evidence and are not proper or permissible factors for consideration with respect to a finding of abuse. *Id.* at 46.

- 14 -

The PFA Order clearly describes the incident of abuse as "[Father] sexually assaulted his daughter," which, as discussed above, is sufficient information to make a finding of abuse under 23 Pa.C.S. § 6102(a). Order, dated 2/11/16. The trial court included some *dicta*, stating that Father did not take responsibility for his actions and that there was a history of abuse. *Id.* The trial court opined that it was considering Father's lack of responsibility when determining what type of visitation to allow between Father and Child and that it was considering the history of the case when determining what type of disposition would be in the child's best interest. Trial Ct. Op. at 23-24. Since the trial court did not consider these factors to make a finding of abuse, and simply included them as *dicta* under the actual incident of abuse – Father's sexual assault of Child – we find no abuse of discretion.

Order affirmed.


Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/12/2017