J-S12004-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JEFFREY TODD LUKENS | : | |
| | : | |
| Appellant | : | No. 2113 EDA 2023 |

Appeal from the Judgment of Sentence Entered July 6, 2023
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0006262-2021

BEFORE: DUBOW, J., SULLIVAN, J., and BENDER, P.J.E.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 20, 2024**

Appellant, Jeffrey Todd Lukens, appeals from the July 6, 2023 judgment of sentence of 25 to 50 years of incarceration entered in the Bucks County Court of Common Pleas following his conviction by a jury of one count each of Indecent Assault—Person Less Than 13 Years of Age, Attempt to Commit Indecent Assault—Person Less Than 13 Years of Age, Unlawful Contact with a Minor—Sexual Offenses, Corruption of Minors, Indecent Assault—Without Consent of Other, Attempt to Commit Indecent Assault—Without Consent of Other, Invasion of Privacy, and Criminal Attempt to Commit Invasion of Privacy.[1] Appellant challenges certain evidentiary rulings. After careful review, we affirm.

_____

[1] 18 Pa.C.S. §§ 3126(a)(7), 901(a), 6318(a)(1), 6301(a)(1)(i), 3126(a)(1), 901(a), 7507.1(a)(2), 901(a), respectively.

The relevant facts and procedural history are as follows. On September 1, 2021, then-11-year-old E.M.'s parents hired Appellant to remove bees from their home. The next day, when Appellant returned to the home to continue working, E.M. asked to help Appellant and Appellant agreed. Appellant provided E.M. with a protective suit to cover the top of his body including his arms, torso, and face.

Eventually, E.M. and Appellant went into the basement and E.M. helped Appellant cut a hole into drywall to expose the bees' nest. While E.M. stood on a ladder, Appellant rubbed E.M.'s upper thigh under his shorts, massaged E.M.'s lower stomach and upper pubic area under his shirt, and took a photo of E.M.'s abdomen using Appellant's cell phone.

Appellant returned to E.M.'s home on September 6, 2021, to complete the job. On that date, Appellant told E.M. that he wanted to measure E.M.'s abdominal muscles. Appellant pulled E.M.'s shorts partially down, exposing his lower stomach and part of his upper pubic area, held a tape measure to E.M.'s torso, and took a photo of E.M.'s exposed torso.

E.M. reported Appellant's conduct to his mother who subsequently reported it to police. On September 30, 3031, the Commonwealth charged Appellant with numerous offenses arising from this conduct.

On September 16, 2022, the Commonwealth filed an omnibus pretrial motion that included requests to admit evidence of prior bad acts pursuant to Pa.R.Crim.P. 404(b). The Commonwealth sought to introduce the testimony of N.A. who, in 2009, was a 12-year-old friend of Appellant's son. On

November 1, 2008, N.A. spent the night at Appellant's home. N.A. was awoken during the night by a poke in his genital area, opened his eyes, and saw Appellant fondling N.A.'s penis over his shorts. N.A. instructed Appellant to stop and Appellant left the room. N.A. reported Appellant's abuse to his father and to the police. On September 3, 2009, the Commonwealth charged Appellant with Indecent Assault—Person Less Than 13 Years of Age, Corruption of Minors, and Unlawful Contact with a Minor. In 2010, N.A. testified at Appellant's trial, which resulted in a jury conviction of all charges.

The Commonwealth also sought to introduce the testimony of C.M. In the spring of 2005, when C.M., who worked with Appellant in Appellant's crab cake business, was 18 years-old, he and Appellant were drinking beer in a barn located on Appellant's property. After they had had a few drinks, Appellant showed C.M. some pornographic magazines and asked C.M. how they made him feel and asked C.M. to measure his penis. C.M. initially refused, but eventually relented because he wanted Appellant's questioning to stop. When C.M. walked to a corner to measure his penis, Appellant walked up behind him and watched over C.M.'s shoulder to make sure C.M. was measuring correctly. This made C.M. extremely uncomfortable and he left the barn shortly thereafter. On another occasion, when Appellant and C.M. were delivering crab cakes, Appellant touched C.M.'s penis over his clothes and attempted to pull down C.M.'s fly. C.M. testified to these facts at Appellant's 2010 trial.

On September 27, 2022, and December 9, 2022, the trial court held hearings on the Commonwealth's motion.[2] At the hearing, the Commonwealth sought to admit the transcripts of N.A.'s and C.M.'s testimony from Appellant's 2010 trial for the court's consideration in determining whether it would permit N.A. and C.A. to testify in the current trial about Appellant's prior conduct. Appellant's counsel objected to the admission of the transcripts, but only on the grounds that he had not cross-examined N.A. and C.A. in 2010. Notably, Appellant did not object to admission of the proffered prior bad acts testimony of N.A. and C.A. as substantive evidence in the current trial. After extensive argument from the parties, the trial court admitted the transcripts, indicating that it would review them for purposes of determining whether the conduct described by N.A. and C.M. constituted prior bad acts evidence that the court would admit as evidence at Appellant's trial.

On December 19, 2022, the trial court entered an order granting the Commonwealth's motion to admit Appellant's prior bad acts evidence "subject to the witness(es) confirming consistency as to what the Commonwealth has offered." Order, 12/19/22, at ¶ 1.

On February 3, 2023, the Commonwealth learned that, due to ordered military deployment, N.A. would be unavailable to testify at Appellant's trial, which the court had scheduled to commence on March 13, 2023. Consequently, the Commonwealth requested that the trial court continue the

_____

[2] The record reflects that Appellant did not file a written response to the Commonwealth's motion to admit prior bad acts evidence.

trial until after N.A. returned from deployment in April of 2023. The court denied the request prompting the Commonwealth to file, on February 17, 2023, a motion *in limine* seeking permission to introduce N.A.'s 2010 trial testimony as evidence in this trial.[3]

At the commencement of trial, but prior to the jury's empanelment, the court considered the Commonwealth's motion *in limine*. Appellant's counsel argued the Commonwealth should not be permitted to read into evidence at this trial N.A.'s testimony from Appellant's 2010 trial because N.A. was not unavailable to testify as defined in 42 Pa.C.S. § 5917.[4] In support of this argument, Appellant asserted that the steps taken by the Commonwealth to compel N.A.'s presence at trial—including emailing N.A. a subpoena prior to his overseas deployment—were insufficient to properly ensure N.A. appeared to testify. He suggested that the Commonwealth should have instead served

---

[3] Appellant did not file a written response to the motion *in limine*.

[4] Section 5917 provides as follows:

> Whenever any person has been examined as a witness, either for the Commonwealth or for the defense, in any criminal proceeding conducted in or before a court of record, and the defendant has been present and has had an opportunity to examine or cross-examine, if such witness afterwards dies, or is out of the jurisdiction so that he cannot be effectively served with a subpoena, or if he cannot be found, or if he becomes incompetent to testify for any legally sufficient reason properly proven, notes of his examination shall be competent evidence upon a subsequent trial of the same criminal issue. . . .

42 Pa.C.S. § 5917.

the subpoena through local law enforcement or that the court should have issued a material witness warrant to force N.A. to testify while he was still present in the United States. Appellant also objected to the admission of N.A.'s prior testimony as violative of Appellant's right of confrontation under the Sixth Amendment and asserted that "it denies a fair trial to the extent that a jury cannot assess the credibility of someone who isn't here." N.T. Trial, 3/13/23, at 14.

The Commonwealth disputed that its method for notifying N.A. to appear as a witness was inadequate and that N.A. was not unavailable as a matter of law. It also indicated that it never contemplated obtaining a material witness warrant to compel N.A.'s appearance as N.A. was cooperative and willing to testify against Appellant. The Commonwealth also asserted that N.A. had been subject to a full and fair cross-examination at the time of Appellant's prior trial and, in light of his current military deployment, it concluded that N.A. was "sufficiently unavailable." *Id.* at 11.

Following argument on this issue, the trial court agreed that N.A. was an unavailable witness and indicated that it would permit the Commonwealth to read N.A.'s testimony into the record at the appropriate time.

Next, the court considered the admissibility of the live testimony of C.M. Appellant objected to the admission of this evidence, characterizing it as inadmissible propensity or character evidence.[5] He noted that C.M.'s

_____

[5] Our review of the record indicates that Appellant did not object to the admission of N.A's testimony on this basis.

allegations of Appellant's 2005 conduct did not result in an arrest or conviction. He argued that, even if the evidence was admissible under Rule 404(b), the prejudice it would cause to Appellant outweighed its probative value and suggested that the court only admit it as rebuttal evidence if Appellant testified. Following its consideration of C.M.'s prior testimony, the trial court ruled that C.M. could testify in the instant trial consistent with his prior testimony.

In support of the charges against Appellant, the Commonwealth presented the testimony of E.M., his parents, Bucks County Children's Advocacy Center coordinator and forensic interviewer Alison Rose, C.M., N.A., and Newtown Township Detective Corporal Joseph Camp. Immediately before C.M. began his testimony, the trial court instructed the jury that C.M was testifying "for a limited purpose, that is for the purpose of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or lack of accident." N.T. Trial, 3/14/23, at 50. The court admonished the jury not to consider his testimony for any other purpose, specifically directing that the jury must "not regard this evidence as showing that the defendant is a person of bad character or criminal tendencies from which you might be inclined to infer guilt." *Id.* at 66. The court also reiterated this instruction prior to dismissing the jury to begin its deliberations. N.T. Trial, 3/15/23, at 65-66.

Appellant did not testify in his own defense. However, in his closing argument, his counsel argued that the Commonwealth failed to prove that

Appellant acted with sexual desire or for sexual gratification. He further argued that any contact between Appellant and E.M. was incidental and normal because E.M. was on a ladder and that, in taking a photograph of E.M., Appellant merely exercised poor judgment.

Following its deliberations, the jury convicted Appellant of Indecent Assault—Person Less Than 13 Years of Age, Attempt to Commit Indecent Assault—Person Less Than 13 Years of Age, Unlawful Contact with a Minor—Sexual Offenses, Corruption of Minors, Indecent Assault—Without Consent of Other, Attempt to Commit Indecent Assault—Without Consent of Other, Invasion of Privacy, and Criminal Attempt to Commit Invasion of Privacy. On July 6, 2023, the trial court sentenced Appellant to a term of 25 to 50 years of incarceration. Appellant filed a timely post-sentence motion, which the trial court denied.

This appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following two issues on appeal:

1. Did the trial court err in admitting "other acts" testimony—those alleged to involve CM and NA—as neither met the requirements of Rule 404(b) and/or should have been excluded as unfairly prejudicial or misleading/confusing under Rule 403?

2. Did the trial court err in permitting NA's allegations to be proved by prior testimony as the Commonwealth failed to prove unavailability as required by Rule 804 and the Sixth Amendment confrontation guarantee?

Appellant's Brief at 5.

**A.**

In his first issue, Appellant challenges the admission of C.M.'s and N.A.'s testimony regarding Appellant's prior conduct. Appellant's Brief at 17-24. As a prefatory matter, we reiterate that our review of the record indicates that Appellant did not object to the admission of N.A.'s testimony as improper Rule 404(b) evidence.[6] He has, thus, waived this claim on appeal. *See Commonwealth v. Ramos*, 231 A.3d 955, 957 (Pa. Super. 2020) (explaining "failure to raise a contemporaneous objection to evidence at trial waives that claim on appeal") (citations omitted); *see also* Pa.R.E. 103(a)(1)(A) (providing a party may only claim error regarding admission of evidence if he makes timely objection on record). Accordingly, we confine our review to the admission of C.M.'s testimony.

Appellant avers that the trial court should have excluded C.M.'s testimony because the acts described by C.M. were largely dissimilar and too remote in time to be admissible prior bad acts evidence. Appellant's Brief at 18, 21-23. Appellant emphasizes that the two instances of sexual contact took place in 2005 when C.M. was 18 years old and both C.M. and Appellant were consuming alcohol. *Id.* at 19. Appellant characterizes the contact between Appellant and C.M. as occurring "during two work-related

---

[6] Furthermore, Appellant has not in his brief cited to the place in the record where he lodged this objection, in violation of Pa.R.A.P. 2119(c) (requiring citation "to the place in the record where the matter referred to appears").

encounters," and notes that, unlike in the instant case, involved looking at pornography. *Id.*

Appellant argues that in addition to being remote in time and dissimilar in their character, the conduct does not show a plan, only a propensity. *Id.* at 20. Appellant asserts that this evidence shows only that Appellant had a propensity to be sexually attracted to males. *Id.* He further asserts that the instant case has "little else in common" with C.M.'s experience other than that both C.M. and E.M. were known to Appellant, both experiences involved touching or looking at the penis, and Appellant used a measuring device or ruler with both. *Id.* Appellant concludes that this is mere propensity "and not a plan or other non-character link to the acts alleged in this trial." *Id.*

Appellant asserts that the trial court's opinion and the court's instruction to the jury supports his claim that the court should not have admitted this evidence. *Id.* at 20-21. Appellant notes that, in its opinion, the trial court did not analyze the remoteness of this incident to the one described by C.M. and did not cite any case law in support of the evidence's admissibility. *Id.* at 20. Appellant also claims, without citation to any authority, that the trial court erred in instructing the jury that it may consider C.M.'s testimony for any or all of the non-character purposes listed in Rule 404(b) and asserts that this "is further confirmation of the inadmissibility of this proof," when it was clear that knowledge, opportunity, identity, or preparation were not "at issue" in this case. *Id* at 21.

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Tyson*, 119 A.3d 353, 357 (Pa. Super. 2015) (*en banc*) (citation omitted). "Accordingly, a ruling admitting evidence will not be disturbed on appeal unless that ruling reflects manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support to be clearly erroneous." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013) (citations and internal quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) prohibits evidence of a defendant's prior bad acts "to prove a person's character" or demonstrate "that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). Nevertheless, the Rule also provides that prior bad acts evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* at 404(b)(2).

Thus, under Rule 404(b) evidence of prior bad acts "is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes" but "may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." *Tyson*, 119 A.3d at 358 (citations omitted). Specifically, such evidence is admissible "if offered for a non-propensity purpose[.]" *Id.* "A common scheme may be relevant to establish any element

of a crime, where intent may be shown through a pattern of similar acts." *Commonwealth v. Einhorn*, 911 A.2d 960, 967 (Pa. Super. 2006).

"When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice." *Tyson*, 119 A.3d at 358. The term "unfair prejudice" in Rule 404(b)(2) "means a tendency to suggest [a] decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." *Commonwealth v. Dillon*, 925 A.2d 131, 141 (Pa. 2007) (citation omitted). "[W]hen examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence," as "[j]urors are presumed to follow the trial court's instructions." *Tyson*, 119 A.3d at 360.

To establish one of the Rule 404(b) admissibility exceptions, there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question." *Commonwealth v. Sami*, 243 A.3d 991, 999 (Pa. Super. 2020) (citation and emphasis omitted).

The trial court admitted C.M.'s testimony pursuant to Rule 404(b) as evidence of Appellant's intent.[7] Trial Ct. Op., 10/13/23, at 10. The trial court explained that it reached this conclusion in light of the following facts:

> Similar to the incident with C.M., in the present case, Appellant had tried to measure a part of E.M.'s body with a tape measure.

---

[7] The court did not, as Appellant argues, admit this evidence to demonstrate the existence of a common plan or scheme.

> In addition, Appellant's entire defense was that none of his touching of E.M. was for sexual purposes or gratification.

*Id.* The court also noted that the probative value of C.M.'s testimony outweighed the potential for unfair prejudice. *Id.*

Following our review, we discern no abuse of the trial court's discretion. As noted above, the Commonwealth may use evidence of a pattern of prior similar acts to show intent. Here, Appellant's defense at trial was that he lacked the requisite intent to commit these crimes because he did not touch or photograph E.M. for the purpose of deriving sexual gratification. The Commonwealth offered, and the trial court did not abuse its discretion in admitting, C.M.'s testimony describing a similar sexual assault also involving Appellant's use of a measuring device, for the purposes of showing that Appellant touched and photographed E.M. with the requisite sexual intent.

Furthermore, we discern no abuse of discretion in the trial court's conclusion that the probative value of this evidence outweighed the potential for unfair prejudice. Because Appellant's defense was his alleged lack of intent and motive to derive sexual gratification, evidence establishing his state of mind, intent, and motive to refute that defense was highly probative. In addition, the trial court twice provided the jury with a limiting instructing explaining how the jury should consider the evidence when deliberating. We presume that it has followed this instruction. *See Tyson*, 119 A.3d at 360. Accordingly, Appellant is not entitled to relief on this claim.

**B.**

- 13 -

Appellant next claims that the trial court erred in permitting the Commonwealth to read into evidence N.A.'s prior testimony. Appellant's Brief at 25-28. Appellant challenges the trial court's conclusion both that the Commonwealth demonstrated N.A.'s unavailability as required by Pa.R.E. 804 and the Sixth Amendment confrontation guarantee, and that Appellant had sufficient opportunity to cross-examine Appellant "in a way that could elicit significant differences between [N.A.'s prior] allegations and the charges in this case." *Id.*

It is axiomatic that the argument portion of an appellate brief must be developed with citation to and discussion of relevant authority and to the record. Pa.R.A.P 2119(a)-(c). "[I]t is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities." *Commonwealth v. Hardy*, 918 A.2d 766, 771 (Pa. Super. 2007) (internal citation omitted). "This Court will not act as counsel and will not develop arguments on behalf of an appellant." *Id.* If a deficient brief hinders this Court's ability to address any issue on review, we shall consider the issue waived. *Commonwealth v. Gould*, 912 A.2d 869, 873 (Pa. Super. 2006) (holding that appellant waived issue on appeal where he failed to support claim with relevant citations to case law and record). *See also In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012) (finding that, where the argument portion of an appellant's brief lacked meaningful discussion of, or citation to, relevant legal authority regarding an issue generally or specifically,

- 14 -

the appellant's issue was waived because appellant's lack of analysis precluded meaningful appellate review).

"We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument[.]" ***Milby v. Pote***, 189 A.3d 1065, 1079 (Pa. Super. 2018). To do so would place this Court "in the conflicting roles of advocate and neutral arbiter." ***Commonwealth v. Williams***, 782 A.2d 517, 532 (Pa. 2001) (Castille, J., concurring). Therefore, when an appellant fails to develop his issue in an argument, the issue is waived. ***Sephakis v. Pa. State Police Bureau of Records and Id.***, 214 A.3d 680, 686-87 (Pa. Super. 2019).

The argument Appellant has presented in support of this claim is woefully underdeveloped and wholly conclusory. Although Appellant provided citation to two cases for the proposition that a "mere assertion of a person being outside of the Commonwealth is inadequate to establish unavailability[,]"[8] he has failed to discuss the facts of this case in the context of the cited cases, has provided no citations whatsoever to the record, and has not included the in his brief text of either Rule 804 or the Confrontation Clause.[9] Furthermore, Appellant has not provided any citation to case law in

---

[8] Appellant's Brief at 25 (citing ***Consolidated Rail Corp. v. Del. River Port Auth.***, 880 A.2d 628, 631 (Pa. Super. 2005) and ***Commonwealth v. Lebo***, 795 A.2d 987 (Pa. Super. 2002)).

[9] Appellant also cited two Fifth Circuit Court of Appeals opinions and two secondary sources and quoted one U.S. Supreme Court Case for the general
*(Footnote Continued Next Page)*

support of his argument that N.A.'s cross examination by the attorney who represented Appellant at his prior trial was inadequate to satisfy the Sixth Amendment's confrontation protections in this trial. Appellant's failure to develop his arguments with citation to and discussion of relevant authority and to the record has hampered this Court's ability to conduct meaningful appellate review. Thus, we conclude that Appellant has waived this claim by failing to develop it.

**C.**

Having found Appellant's claims either meritless or waived, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/20/2024

_____

proposition that the Sixth Amendment right to confront adverse witnesses is a right "premised on the importance of having the witness 'stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worth of belief.'" Appellant's Brief at 26 (quoting *Mattox v. United States*, 156 U.S. 237, 242-43 (1895).