J-A26038-20

2020 PA Super 294

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NASEEMA SAMI | : | No. 252 EDA 2020 |

Appeal from the Order Entered January 3, 2020
In the Court of Common Pleas of Montgomery County Criminal Division
at No(s): CP-46-CR-0003563-2019

BEFORE: BENDER, P.J.E., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY STEVENS, P.J.E.: **FILED DECEMBER 22, 2020**

The Commonwealth of Pennsylvania appeals from the order of the Court of Common Pleas of Montgomery County denying the Commonwealth's motion *in limine* seeking to introduce prior bad act evidence in the prosecution of Appellee Naseema Sami ("Sami") in her upcoming double murder trial. The trial court's order prohibits the Commonwealth from presenting or attempting to elicit evidence regarding Sami's possession or use of any drug other than marijuana. The Commonwealth has certified that the trial court's ruling will terminate or substantially handicap the prosecution. *See* Pa.R.A.P. 311(d).

After careful review, we affirm the trial court's order.

The trial court compiled the following factual background from the parties' pretrial motions and responses:

On Sunday, March 10, 2019, at 8:17 p.m., the West Norriton Township Police Department was dispatched to check the

_____

[*] Former Justice specially assigned to the Superior Court.

welfare of Lila Frost who resided in the first floor apartment at 10 West Indian Lane, West Norriton Township, Montgomery County, Pennsylvania. An upstairs tenant had not seen Lila Frost for several days although her vehicle was parked at the property. On Sunday, March 10, a concerned neighbor called the police to request that they check on Lila Frost.

West Norriton Police Sergeant Dale Butler and Patrol Officers Nathan Landes and Brian Bishop arrived on location and found the front door to the first floor apartment secured. With the assistance of a family member, the officers gained access to the first floor apartment through the rear door. In the bedroom, officers observed a female, Naseema Sami, age 43, and her son, age 6, emerge from underneath a bed. Sergeant Butler observed what he believed to be dried blood on Naseema Sami's hands. In a tub in the bathroom, Sergeant Butler located a deceased female, later identified as Lila Frost, age 78. Sergeant Butler located a second deceased female underneath a table in the kitchen, who later was identified as Lorraine Gigliello, age 68.

On Sunday, March 10, 2019, Montgomery County Detective Gregory Henry and West Norriton Township Police Detective Charles Naber interviewed Naseema Sami, a resident of Ridley Township, Delaware County. Sami told detectives she drove to 10 West Indian Lane on Thursday, March 7, 2019, because she had once resided there twenty (20) years earlier and desired a safe place to go. Sami stated that Frost, her previous landlord at 10 West Indian Lane, told Sami she could contact her if she ever needed anything.

Sami and her six year old son entered an unlocked door to the rear of Lila Frost's first floor apartment. Sami told detectives that no one was in the residence at the time. While inside the residence, Sami answered a knock at the front door and recognized a woman known to Sami as Lorraine. Sami thought that Lorraine was going to call the police on her. Sami began to strike Lorraine with several blows to the face and chest. Sami stated that, while fighting with Lorraine, Lila Frost entered the apartment from the rear door. Sami stated that she cut Lorraine with a tomato sauce bottle. Sami stated that she kicked Lila Frost into the bathtub and struck her in the head and neck until she died. Sami and her son did not leave the residence and were present when the police arrived three days later.

Trial Court Opinion (T.C.O.), 3/12/20, at 1-3 (paragraph spacing added).

After Sami was searched incident to arrest and consented to a search of her vehicle, no contraband was recovered from her person or her vehicle. Sami was not required to submit to drug testing upon her entry to prison. Investigating officers did not apply for a search warrant for Sami's home.

Several days after Sami's arrest, on March 13, 2019, Sami's brother, Ibraheem Choudhry ("Ibraheem"),[1] gave a statement to the police, in which he disclosed that Sami was a marijuana user. He also indicated he had recently gone to Sami's house to retrieve clothes for Sami's son and made the following observations:

> I saw a bottle of generic Prozac in [Sami's] name, it looked pretty old. I also saw drug paraphernalia, a marijuana pipe on her bedroom dresser. In a box in her closet there was [sic] empty baggies with residue, foil ball with something in it, marijuana grinder and different pipes.

Pre-trial Hearing, 11/22/19 at 40-42 (quoting Statement of Ibraheem Choudhry, 3/13/19, at 3).[2]

---

[1] We refer to Ibraheem Choudhry as "Ibraheem" as the testimony of Sami's father, Muhammed Choudhry, is also relevant to this case.

[2] We note that the initial statement of Ibraheem Choudhry, the statements of Charlotte Sami and Muhammed Choudhry, and the expert report of prosecution expert Dr. John O'Brien (as discussed *infra*) were not included in the certified record submitted to this Court. It is well established that "[t]his Court cannot meaningfully review claims raised on appeal unless we are provided with a full and complete certified record." ***Commonwealth v. Miller***, 212 A.3d 1114, 1127 (Pa.Super. 2019).
  After an informal inquiry was made to the trial court through this Court's Prothonotary to locate the missing documents, there is no evidence that the Commonwealth caused the problem in transmitting the record. In addition, both parties and the trial court quote the relevant portions of each document.

On March 14, 2019, officers interviewed Sami's parents, Charlotte Sami and Muhammed Choudhry. Sami's mother, Charlotte Sami, admitted that "[w]e suspected that [Sami] was using drugs in the early 90's, I don't know what kind of drugs. That was based on her appearance at the time. I don't know about drugs or alcohol recently." T.C.O. at 6 (quoting Statement of Charlotte Sami, 3/14/19, at 2). Muhammed Choudhry recalled that his daughter, Sami, got into trouble with alcohol about fifteen years earlier, but did not think she currently used drugs or alcohol. T.C.O. at 6 (citing Statement of Muhammed Choudhry, 3/14/19, at 2).

On July 23, 2019, the prosecution charged Sami with first-degree murder (two counts), third-degree murder (two counts), and other related charges. On October 23, 2019, Sami filed a notice of insanity defense and a report prepared by defense expert Dr. David DeMatteo, who concluded that Sami satisfied the diagnostic criteria for Delusional Disorder and opined that she was experiencing delusional beliefs and intense paranoia at the time of the instant offenses such that "her ability to understand the nature/ wrongfulness of her actions was significantly compromised due to her severe mental illness." DeMatteo Expert Report, at 25.

Dr. DeMatteo also specified that during his evaluation, Sami denied any significant history of substance abuse, but admitted to using marijuana

_____

In the interest of judicial economy, we will review the prosecution's claim as if these omitted documents were part of the certified record. **See Miller**, **supra**.

- 4 -

"occasionally" due to pain from cramps and in her neck. DeMatteo Report, at 14. In addition, Dr. DeMatteo had also interviewed Sami's parents, who disclosed that they believed that Sami "hid" her alcohol use from them and likely used drugs, but they did not have firm evidence of her drug use. *Id*. Sami's parents revealed that they had found in Sami's bedroom "a hash pipe and drug paraphernalia, an e-cigarette with a 'thick, syrupy liquid,' and a cigar box that contained a razor blade, 'white powder' and a 'tablet.'" *Id*. at 14-15. Sami's father told Dr. DeMatteo that Sami's "face was changing and her attitude was changing … like drug people." *Id*. at 15.

On November 21, 2019, during a witness preparation meeting, Ibraheem provided additional details about the drug paraphernalia found in Sami's bedroom after the crimes at issue. Ibraheem had observed glass straws or pipes that were scorched on one end, as well as plastic baggies containing a translucent, brown crystalline residue that "might have been" methamphetamine. Statement of Ibraheem Choudhry, 11/21/19, at 2-3.

Ibraheem's belief was based on training he received in criminal justice classes he attended at Lockhaven University and in his completion of the Delaware County Police Academy in 2005. *Id*. Ibraheem did not indicate that he had any experience as a police officer. *Id*. Ibraheem shared that he had twelve years' experience as a volunteer firefighter but admitted that he had not encountered any illegal drugs in his capacity as a firefighter. *Id*.

Ibraheem further stated that after he told his parents and defense investigators about his discovery, defense investigators removed the

paraphernalia from the home. *Id*. at 3. Ibraheem also shared that when he last saw Sami, he was startled by her appearance as Sami "seemed to have lost a significant amount of weight and appeared frail" as compared to when he last saw Sami five to six months earlier. *Id*.

On November 22, 2019, the Commonwealth filed a motion *in limine* to compel discovery of the drug paraphernalia recovered from Sami's residence. That same day, the trial court held a hearing on the parties' pretrial motions, which included, *inter alia*, the Commonwealth's motion to compel discovery.

At that hearing, the prosecutor and lead detective admitted that, at the time that they were made aware in March 2019 that drug paraphernalia was discovered in Sami's home, the prosecution did not understand the relevance of that evidence as it related to the murder charges. Pretrial motion hearing, 11/22/19, at 16-18. The detective did not apply for a search warrant for Sami's residence as he did not believe there was probable cause to do so. *Id*. at 16-18, 42-45. However, the prosecution had since learned that evidence of Sami's past drug usage factored into the opinion of the prosecution's psychiatric expert witness, Dr. John O'Brien, who was still in the midst of preparing his expert report. *Id.* at 17-18.

Michael Dayoc, the chief investigator for the Montgomery County Public Defender's Office, testified that on July 9, 2019, Sami's parents insisted that defense investigators take various items of drug paraphernalia from Sami's bedroom in their home. *Id*. at 63-65. Dayoc indicated that Sami's parents were afraid that they would be prosecuted and "locked up for this little bit of

[drug paraphernalia] in the residence." *Id*. at 65. Defense investigators recovered a marijuana grinder, a vape pen, a marijuana bud, plastic baggies, a prescription pill bottle, rolling papers, a wooden box, and a receipt. *Id*. at 65-66. Dayoc admitted to throwing away some of the items, as he felt these items had no bearing on the instant case. *Id*. at 67. Dayoc denied seeing a foil ball or glass pipes and recalled that the baggies did not have anything in them. *Id*. at 69-70. Dayoc testified that the only evidence he had remaining in his possession were the vape pen, pill bottle, and wooden box. *Id*. at 73.

At the conclusion of the hearing, the trial court ordered the defense to turn over to the prosecution the remaining pieces of evidence that had been seized from Sami's residence. The trial court also directed the prosecution to seek expedited testing of these items.

On November 23, 2019, the Commonwealth's expert, Dr. O'Brien, submitted a report in which he offered the following opinion:

> It is my opinion that the most appropriate diagnosis for Ms. Sami's array of symptoms at the time of the offense and preceding it is Substance Intoxication/Substance Induced Psychotic Disorder. It is my opinion that those symptoms were the result of voluntary intoxication utilizing marijuana and ***very possibly other drugs***.
>
> Regardless of how one diagnoses Ms. Sami, it is clear to me that at the time of the offense, she was able to appreciate the nature and quality of her acts in connection with the physical altercations that she had on March 7, 2019 with Lorraine Gigliello and Lila Frost which resulted in their deaths. My evaluation of Ms. Sami indicates that throughout the period of time that she was symptomatic she maintained sensitivity to and awareness of potential illegal or wrongful behaviors. It is my opinion that at the time of the offense she was able to appreciate the wrongfulness of her acts under generally accepted societal standards, even if she felt justified in killing Ms. Gigliello and Ms. Frost in self-defense

arising out of their behavior toward her and the paranoid symptoms she was experiencing during that period of time. While Ms. Sami's ability to conform her conduct to the requirements of the law may have been compromised at the time of the offense, it is my opinion that it was compromised by her voluntary use of drugs.

All the aforementioned opinions are rendered to a reasonable degree of medical and psychiatric certainty.

T.C.O. at 5 (quoting O'Brien Report, at 25) (emphasis added).

On November 25, 2020, defense counsel filed a motion *in limine*, seeking to exclude any reference to the drug evidence, contending there is no evidence that Sami used drugs at or near the time of the instant crimes. Defense counsel argued that any evidence that Sami had possession of methamphetamine or cocaine was speculative and asserted that Ibraheem's claim that the baggies contained methamphetamine was improper expert testimony from a laywitness.[3] As such, defense counsel asked the portion of Dr. O'Brien's report referring to Sami's use of drugs other than marijuana be excluded as it is based on speculative evidence.

In addition, defense counsel asked the trial court to exclude any reference to the marijuana as the cause of the incident and asked that a *Frye* hearing be held to determine on whether it is scientifically accepted that marijuana can cause extreme violence.

On December 13, 2019, the Commonwealth filed a "Motion to Introduce Evidence of the Defendant's Other Bad Acts," arguing, *inter alia*, that the drug

---

[3] Defense counsel also included a request to withdraw if the drug evidence was admitted, asserting that the disclosure would create a conflict of interest.

paraphernalia found in Sami's home and her family members' statements were admissible under the intent and *res gestae* exceptions to Pa.R.E. 404(b). The Commonwealth intended to present evidence that Sami had drug paraphernalia in her home that could have been used to ingest controlled substances, which can contribute to feelings of paranoia and anxiety.

On January 3, 2020, the trial court entered an order denying in part and granting in part the Commonwealth's "Motion to Introduce Evidence of Defendant's Other Bad Acts," providing in pertinent part that "the Commonwealth is PROHIBITED from questioning, referencing, arguing or eliciting testimony or presenting evidence regarding any drug possession or use by defendant other than marijuana." Order, 1/3/20, at 1.[4] In addition, the order stated that "[t]he Commonwealth's expert, Dr. John O'Brien, is PROHIBITED from referencing or testifying at trial about any other drugs or drug paraphernalia besides marijuana." *Id*.[5] The Commonwealth filed a timely appeal and complied with the trial court's direction to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

_____

[4] The order also included a footnote indicating that "[t]he Commonwealth represented to the court that the testing of the items produced for inspection and testing obtained from [Sami's] residence revealed the presence of marijuana and its active agent THC and no other drugs." Order, 1/3/20, at 1.

[5] Moreover, in this order, the trial court scheduled a hearing on the defense's "cross-motion" to determine whether a sufficient factual and causal foundation exists regarding Sami's history of marijuana use to support Dr. O'Brien's opinion that suffered a "Substance Intoxication/ Substance Induced Psychotic Disorder" at the time of her offenses. The trial court indicated that it would defer its ruling on this issue until the conclusion of the hearing. *Id*. at 1-2.

The Commonwealth raises the following question for review on appeal:

Whether the trial court abused its discretion by excluding evidence about any drug possession or use by [Sami] other than marijuana, where that evidence was relevant and, because its probative value outweighs any prejudice, admissible to show intent, knowledge, and state of mind?

Commonwealth's Brief, at 6.

In a criminal case, "the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). *See Commonwealth v. Moser*, 999 A.2d 602, 604 (Pa.Super. 2010) (finding Commonwealth could appeal the trial court's denial of its motion *in limine* which resulted in the exclusion of prosecution evidence and had the effect of substantially handicapping the prosecution). As the trial court's ruling in this case had the effect of excluding prosecution evidence and the Commonwealth certified that the ruling substantially handicaps the prosecution,[6] this appeal is proper.

In reviewing the denial of the Commonwealth's motion *in limine*, our standard of review is as follows:

when reviewing the denial of a motion in limine, we apply an evidentiary abuse of discretion standard of review. *See Commonwealth v. Zugay*, 745 A.2d 639 (Pa.Super. 2000) (explaining that because a motion in limine is a procedure for obtaining a ruling on the admissibility of evidence prior to trial, which is similar to ruling on a motion to suppress evidence, our

---

[6] While Sami asks this Court to question the grounds for the Commonwealth's good faith certification, we are not permitted to conduct such an inquiry. *Moser*, 999 A.2d at 605, n.2.

- 10 -

standard of review of a motion in limine is the same of that of a motion to suppress). The admission of evidence is committed to the sound discretion of the trial court and our review is for an abuse of discretion.

***Commonwealth v. Kane***, 188 A.3d 1217, 1229 (Pa.Super. 2018) (quoting

***Commonwealth v. Stokes***, 78 A.3d 644, 654 (Pa.Super. 2013) (citations

and brackets omitted)).

Specifically, the Commonwealth argues that the trial court abused its discretion in precluding the admission of the drug paraphernalia evidence found in Sami's home which the prosecution argues was admissible under Rule 404(b) to show Sami had "access to, knowledge of and used those drugs in a way that impacted her state of mind during the double murders." Commonwealth's Brief, at 22.

As a general rule, "the threshold inquiry with admission of evidence is whether the evidence is relevant." ***Commonwealth v. Cook****,* 597 Pa. 572, 602, 952 A.2d 594, 612 (2008) (citations omitted). Our rules of evidence state that "[a]ll relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. Pennsylvania Rule of Evidence 401 provides that "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action. Pa.R.E. 401. Further, this Court has provided that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference

or presumption regarding a material fact." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 316 (Pa.Super. 2019).

However, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Specifically, with respect to the admission of prior bad act evidence, we are guided by the following principles:

> In ***Commonwealth v. Sherwood***, 603 Pa. 92, 982 A.2d 483 (2009), the Pennsylvania Supreme Court set forth the general principles regarding the admissibility of prior bad acts at trial as follows:
>
> > Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> ***Id***.at 497, *citing* ***Commonwealth v. Powell***, 598 Pa. 224, 956 A.2d 406, 419 (2008). "The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts." ***Commonwealth v. Ross***, 57 A.3d 85, 98–99 (Pa.Super. 2012) (*en banc*) (citations omitted).
>
> In ***Ross***, an *en banc* panel of this Court acknowledged the possibility that Rule 404(b)(2)'s exceptions could swallow the general rule, and offered the following caution:

> The purpose of Rule 404(b)(1) is to prohibit the admission of prior bad acts to prove "the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad act conduct and that alleged in a current case. ***To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule— namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question....*** [T]his Court has warned the prior bad acts may not be admitted for the purposes of inviting the jury to conclude that a defendant is a person "of unsavory character" and thus inclined to have committed the crimes with which he/she is charged. ***See***, ***e.g., Commonwealth v. Kjersgaard***, 276 Pa.Super. 368, 419 A.2d 502, 505 (Pa.Super.1980).

> ***Ross***, 57 A.3d at 105–06.

***Commonwealth v. Sitler***, 144 A.3d 156, 163–64 (Pa.Super. 2016).

In resolving the Commonwealth's pre-trial motion *in limine*, the trial court did not discuss whether the drug evidence was relevant to the murder charges. Instead, the trial court found that even if the drug evidence was relevant, it should be excluded as it was overly prejudicial. The trial court emphasized that there was no evidence that Sami ingested drugs on the date of the crimes as there were no drugs found on Sami at the time of her arrest or at the scene of the crimes. Moreover, the trial court explained:

> In the instant matter, the Commonwealth asserts that the drug evidence should be admitted under the *res gestae* exception. The Commonwealth seeks to use this evidence to characterize Ms. Sami as a drug user. Even if admissible, the prejudicial impact of introducing evidence of drug possession outweighs its probative value. … There is no nexus between drug possession and the crimes charged. There is no timeline connecting any drug use to

- 13 -

the crimes charged. The evidence of which and when specific drugs were consumed is purely speculative and is not proper 404(b) evidence.

T.C.O. at 13.

In *Commonwealth v. duPont*, 730 A.2d 970, 980–81 (Pa.Super. 1999), this Court affirmed the trial court's decision to allow the prosecution to admit evidence of defendant's prior substance abuse in rebuttal after the defense had raised an insanity defense to the murder charge and had offered expert testimony to show the appellant's mental illness was not the result of substance abuse. However, we note that the appellant in *duPont* offered presented multiple "defense witnesses, both lay and expert, [who] made detailed references in their testimony to [the] appellant's use of cocaine and alcohol." *Id*. The *duPont* Court noted that "the cause of appellant's mental illness was clearly crucial to the defense, and consideration of his substance abuse, particularly by his expert witnesses, was an indispensable facet of establishing the history of that mental illness." *Id*. at 981.

Based on this precedent, we acknowledge that evidence of a defendant's prior drug use is relevant to rebut an insanity defense to murder charges by showing that the defendant's mental illness was a drug-induced psychosis. Defense expert Dr. DeMatteo acknowledged in his expert report that it was necessary to consider Sami's use of controlled substances in establishing the history of her mental illness. DeMatteo Report, at 14-15.

Nevertheless, in this case, the Commonwealth has not shown that the disputed evidence of Sami's alleged use of methamphetamine and cocaine is

relevant, such that "it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." Pa.R.E. 401. Moreover, the prosecution failed to establish "a close factual nexus sufficient to demonstrate the connective relevance" between her possible possession of cocaine and methamphetamine to the crimes in question. **Sitler**, **supra**; **Ross**, **supra**.

The prosecution has not presented any evidence to show that Sami ingested these drugs on or around the date of the crimes. Upon her arrest, no drug evidence or paraphernalia was found on Sami's person or her vehicle. Shortly after her arrest, Sami gave a statement to police in which she indicated that she was not under the influence of a controlled substance. Pretrial motion hearing, 11/22/19, at 16-17, 42-45. Moreover, the lead detective testified that officers did not suspect Sami was intoxicated and would not have taken Sami's statement if they felt she was under the influence of a controlled substance. **Id**. at 43-44. As there was no suspicion that Sami was intoxicated at the time of her arrest, the police did not request toxicology testing upon Sami's entry into prison.

While defense investigators recovered drug paraphernalia (the vape pen, marijuana bud, and marijuana grinder) from Sami's residence, these items were consistent with marijuana use. Sami has denied having any substance abuse issues, but admitted to using marijuana occasionally. Sami's brother, Ibraheem, confirmed that Sami was a marijuana user.

Moreover, the only evidence that other drugs (cocaine and methamphetamine) existed in Sami's home consists of the statements of her family members concerning items they observed in Sami's bedroom, namely a white powder, a tablet, and baggies containing a brown crystalline residue. As these items were never turned over to law enforcement, testing was never performed to identify the substances.

While Ibraheem later told officers that he observed in Sami's bedroom a plastic baggie containing brown crystalline residue that "might have been" methamphetamine, we agree with the trial court that speculation itself without corroborating evidence does not establish "a close factual nexus sufficient to demonstrate the connective relevance" between Sami's possible possession of cocaine and methamphetamine to the crime in question.[7]

We find that the probative value of this evidence is outweighed by the potential for prejudice to the defense. Allowing the prosecution to admit speculative evidence of Sami's possible use of cocaine and methamphetamine that lacked a factual nexus to the murder charges would have the potential to confuse the jury or to result in unfair prejudice, in "suggesting a decision on

---

[7] The trial court never specifically ruled on the defense's motion challenging Ibraheem's qualifications and experience to identify the substance he claims he observed as methamphetamine. Even assuming *arguendo* that the trial court had found this testimony was admissible, we are not persuaded that Ibraheem's statements established connective relevance between the alleged methamphetamine and Sami's commission of the instant crimes to render Ibraheem's statement to be proper 404(b) evidence.

an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403 cmt.

Accordingly, we conclude that the trial court properly exercised its discretion in denying the Commonwealth's motion *in limine* seeking to admit evidence suggesting Sami possessed and used drugs other than marijuana (cocaine and methamphetamine).

Given this conclusion, we agree with the trial court's decision to prohibit prosecution expert Dr. O'Brien from testifying about Sami's possession or use of drugs other than marijuana. Our Supreme Court has held:

> An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture.... To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion, based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion.

*City of Philadelphia v. W.C.A.B. (Kriebel)*, 612 Pa. 6, 18–19, 29 A.3d 762, 770 (2011) (quoting *Collins v. Hand*, 431 Pa. 378, 390–91, 246 A.2d 398, 404 (1968) (internal citations omitted)).

For the foregoing reasons, we affirm the trial court's order denying the Commonwealth's motion *in limine*.

Order affirmed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/22/2020