J-A03002-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JENSUN CLAYCOMB | : | |
| | : | |
| Appellant | : | No. 397 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 24, 2023
In the Court of Common Pleas of Bedford County Criminal Division at
No(s):  CP-05-CR-0000001-2021

BEFORE:  BOWES, J., KUNSELMAN, J., and MURRAY, J.

MEMORANDUM BY BOWES, J.:                    **FILED:  March 14, 2024**

Jensun Claycomb appeals from the judgment of sentence of six to fifteen years of incarceration following his conviction for, *inter alia*, aggravated assault.  We affirm.

We glean the following facts from the certified record.  Appellant lived with Julia Hadix, their six-month-old daughter G.C., and Ms. Hadix's nearly two-year-old son from a prior relationship, K.H.  On September 1, 2020, Ms. Hadix was baking a cake in the kitchen with K.H. while Appellant was playing a video game in the living room.  G.C. was on the sofa next to Appellant.  While in the kitchen, Ms. Hadix heard Appellant yell her name, and she entered the room.  Appellant was holding G.C., whose eyes were rolled to the back of her head and whose breathing was a "whisper."  N.T. Trial, 1/31/23, at 34.  Ms. Hadix performed CPR on G.C. until paramedics arrived.

The paramedics took over lifesaving measures, established a pulse after five minutes of performing CPR, and transported G.C. to UPMC Bedford.

A CT scan showed that G.C. had sustained a brain injury. She was intubated and placed on a ventilator, but nonetheless went into respiratory and cardiac arrest. However, after multiple hours of treatment in the emergency room and in critical care, G.C.'s condition ceased being life-threatening, and she was transported in a pediatric ambulance to Children's Hospital in Pittsburgh.

Due to the nature of G.C.'s injuries, Keenan Walker, a nurse at UMPC Bedford, reported the case as potential child abuse to Bedford County Children, Youth, and Families. Since G.C. had bleeding inside of her skull, Mr. Walker believed that G.C.'s condition was a result of shaken baby syndrome rather than any previous falls or head injuries.

Dr. Jennifer Wolford was the on-call physician at Children's Hospital in Pittsburgh who treated G.C. in the intensive care unit. Dr. Wolford stated that the nature of G.C.'s brain injury could not have been caused by anything except "violent shaking" and that all indications surrounding her injury "tell us that [G.C.] was shaken in a violent manner." *Id*. at 346-47. In coming to this conclusion, Dr. Wolford ruled out the suggestion that other trauma could have contributed to G.C.'s injury. *Id*. at 347. Indeed, Dr. Wolford testified that the symptoms displayed by G.C. would have manifested within a few minutes of experiencing the trauma. *Id*. at 403-05.

Appellant was arrested and charged with numerous crimes, including aggravated assault. Before his trial, Appellant filed a motion *in limine*, wherein he sought permission for an expert witness to testify remotely at trial. After a hearing, the trial court denied the motion.

The trial court, sitting as fact-finder, found Appellant guilty of aggravated assault, simple assault, endangering the welfare of a child, and recklessly endangering another person. Appellant did not file a post-sentence motion but did timely appeal. The court ordered Appellant to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied. Thereafter, the court issued a Rule 1925(a) opinion.

Appellant presents the following questions for our review:

I.     Whether the Commonwealth presented insufficient evidence to prove beyond a reasonable doubt that Appellant injured the victim in this matter in any way?

II.    Whether Appellant's conviction was against the weight of the evidence?

III.   Whether the trial court erred in denying Appellant's request to have an expert witness testify virtually?

Appellant's brief at 11.

Appellant first contests the sufficiency of the evidence to sustain his conviction for aggravated assault. ***See id***. at 23. We review a challenge to the sufficiency of the evidence under the following guidelines:

The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh

- 3 -

the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Fitzpatrick*, 159 A.3d 562, 567 (Pa.Super. 2017) (cleaned up).

Our Crimes Code states that a person is guilty of aggravated assault if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to a child less than [thirteen] years of age, by a person [eighteen] years of age or older." 18 Pa.C.S. § 2702(a)(9). "Serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" *Commonwealth v. Martuscelli*, 54 A.3d 940, 948 (Pa.Super. 2012). Since there is rarely direct evidence of the defendant's intent, it ordinarily must be proven through circumstantial evidence and inferred from

acts, conduct, or attendant circumstances. *See Commonwealth v. Fortune*, 68 A.3d 980, 984 (Pa.Super. 2013).

Appellant alleges that the Commonwealth did not show that he "ever caused any bodily injury to the victim at all." Appellant's brief at 23. He claims that nobody saw him harm G.C. and that she had shown behavioral changes prior to the date when the incident in question occurred. *See id*. at 27-28. In that vein, Appellant argues that G.C. had sustained prior head injuries while under the sole care of Ms. Hadix, when G.C. fell from a bed and K.H. landed on her head. *Id*. at 27. Appellant also avers that Ms. Hadix and K.H. were around G.C. near the time when she was injured, suggesting they may have caused the injury. *Id*. For these reasons, Appellant requests this Court reverse his conviction.

Upon review, the certified record contains ample evidence to sustain Appellant's conviction. Dr. Wolford testified that G.C.'s injuries were caused by violent shaking within minutes of the symptoms manifesting. *See* N.T. Trial, 1/31/23, at 346-47. During the moments prior to G.C. exhibiting symptoms, Appellant was the only person with her, as he was in the living room playing a video game while Ms. Hadix and K.H. were in the kitchen baking a cake. *Id*. at. 29. Furthermore, expert testimony eliminated any previous events, such as G.C.'s fall from the bed, as contributing to her hospitalization. *Id*. at 348. Finally, Dr. Wolford stated that the injuries sustained by G.C. demonstrated that she was a victim of shaken baby syndrome and that was the sole reason for her condition. *Id*. In sum, the

evidence presented demonstrated that Appellant caused serious bodily injury to G.C., as he violently shook her, resulting in her near death.

Accordingly, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the Commonwealth's evidence was neither so unreliable nor so weak and inconclusive as to make the verdict pure conjecture. *See Commonwealth v. Gause*, 164 A.3d 532, 540 (Pa.Super. 2017) ("Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances").

Next, Appellant contends that the verdict was against the weight of the evidence. As explained *infra*, this issue is waived. In order to preserve such a claim, "a defendant must present his challenge to the weight of the evidence to the trial court for a review in the first instance." *Commonwealth v. Stiles*, 143 A.3d 968, 980 (Pa.Super. 2016). A weight of the evidence claim must be raised in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. *See Commonwealth v. Ford*, 141 A.3d 547, 556 (Pa.Super. 2016); Pa.R.Crim.P. 607. The failure to properly preserve a weight claim will result in waiver, even if the trial court addresses the issue in its opinion. *See Commonwealth v. Thompson*, 93 A.3d 478, 490–91 (Pa.Super. 2014). Appellant did not file a post-sentence motion contesting the weight of the evidence, nor did he make an oral or written motion before sentencing. Therefore, the claim is waived.

Finally, Appellant avers that the trial court erred in denying his motion *in limine*, which sought leave to have his expert witness testify virtually. We note that, "when reviewing the denial of a motion *in limine*, we apply an evidentiary abuse of discretion standard of review." ***Commonwealth v. Sami***, 243 A.3d 991, 997 (Pa.Super. 2020) (citation omitted). "An abuse of discretion will not be found based on a mere error of judgment, but rather exists where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will." ***Commonwealth v. Christine***, 125 A.3d 394, 398 (Pa. 2015) (cleaned up).

At the hearing on Appellant's motion *in limine*, counsel argued that "travel to and from the courthouse may be an issue in some of the winter months." N.T. Motion *in Limine* Hearing, 12/20/22, at 4. Moreover, Appellant stated that the ability to testify remotely would be "certainly convenient" since Appellant's expert lived in California. ***Id***. When it denied Appellant's motion, the trial court indicated that it wished to have the expert testify in person to more accurately assess his credibility. ***Id***. at 6.

Appellant asserts that, in so ruling, the trial court violated Article I, § 9 of the Pennsylvania Constitution and the Compulsory Process Clause of the United States Constitution, since the court had no cause to deny his request

that his proposed expert testify virtually.[1]  Appellant's brief at 29.  Appellant alleges that because of inclement weather at the time of trial and the difficulty of travelling from California to Pennsylvania to testify, his expert could not testify in person and, instead, was "only able to testify via contemporaneous video testimony."  *Id*. at 31.

The trial court was unconvinced by Appellant's assertions, noting that Appellant never claimed that his expert witness was unable to attend the trial, only that it would be inconvenient for him to do so.  *See* Trial Court Opinion, 8/15/23, at 7-8.  Indeed, the certified record is devoid of any references or assertions as to why Appellant's expert was only able to testify remotely and why he could not attend the trial in person.  Furthermore, contrary to Appellant's seeming contention, there is no indication in the record that inclement weather prevented Appellant's expert witness from travelling to Pennsylvania from California.  Phrased differently, prior to this appeal, Appellant never alleged that his expert was **unable** to attend trial, only that it would be more convenient for him if he were granted the ability to testify remotely.  Moreover, the trial court's stated justification during the motion *in limine* hearing of wishing to more accurately assess the credibility of

---

[1] Article I, § 9 of the Pennsylvania Constitution states, in pertinent part, that "[i]n all criminal prosecutions the accused hath a right . . . to have compulsory process for obtaining witnesses in his favor."  Pa.Const. Art. I, § 9.  Similarly, the Sixth Amendment to the United States Constitution states "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor."  U.S. Const. Am. VI.  However, since the trial court did not deny Appellant the right to compel a witness to testify at trial, these clauses are irrelevant to the matter *sub judice*.

Appellant's expert witness was not manifestly unreasonable. ***See Commonwealth v. Baker***, 24 A.3d 1006, 1020 (Pa.Super. 2011) (cleaned up) ("It is the province of the trier of fact to pass upon the credibility of witnesses."). Hence, the trial court did not err in denying Appellant's request to allow his expert to testify virtually.

In sum, none of Appellant's three challenges warrants relief and, as such, we affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 03/14/2024