J-S47032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MICHAEL DAVIS | : | |
| Appellant | : | No. 971 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002024-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MICHAEL DAVIS | : | |
| Appellant | : | No. 973 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002025-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| MICHAEL DAVIS | : | |
| Appellant | : | No. 974 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002026-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|

|  | : |  |
| --- | --- | --- |
| v. | : |  |
|  | : |  |
|  | : |  |
| MICHAEL DAVIS | : |  |
|  | : |  |
| Appellant | : | No. 975 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002027-2021

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| --- | --- | --- |
|  | : | PENNSYLVANIA |
|  | : |  |
| v. | : |  |
|  | : |  |
|  | : |  |
| MICHAEL DAVIS | : |  |
|  | : |  |
| Appellant | : | No. 1063 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 4, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002028-2021

BEFORE: KUNSELMAN, J., SULLIVAN, J., and BECK, J.

MEMORANDUM BY BECK, J.: **FILED APRIL 22, 2025**

Michael Davis ("Davis") appeals from the judgments of sentence imposed by the Philadelphia County Court of Common Pleas ("trial court") following his convictions of first-degree murder, aggravated assault, firearms not to be carried without a license, carrying firearms in public in Philadelphia, and possessing instruments of crime ("PIC").[1] Davis challenges the sufficiency

---

[1] 18 Pa.C.S. §§ 2502(a), 2702(a)(1), 6106(a)(1), 6108, 907(a).

- 2 -

and the weight of the evidence to support his convictions. As we find no merit to either claim, we affirm.

The trial court summarized the background of this case as follows:

On October 8, 2020, at approximately 7:58 p.m., five men were hanging out on the sidewalk near 4937 Frankford Avenue in Philadelphia when [Davis] walked up and began shooting at them with a pistol. [Davis] shot and killed the decedent, Ammron Hargrove [("Hargrove")], and injured four other victims, Laquan Hayes, De Vaughn Hart, Darrel Bell, and Khalil Clowney. [Davis] is seen on surveillance video parking his car, a red Saturn Vue, on Wakeling Street, around the corner and a block away from where the victims were hanging out. [Davis] leaves the vehicle running with its lights on and walks west down Wakeling Street before turning the corner onto Frankford Avenue. [Davis] briefly steps in and out of two storefronts while walking down Frankford, first a Chinese restaurant called Super Garden, where he is seen on internal cameras adjusting the firearm in his waistband and then Dezzy's Jamaican Restaurant. There was no internal camera in Dezzy's to show what occurred inside. [Davis] is seen wearing a surgical mask, a blue jacket, dark blue Adidas pants with a distinctive light stripe down the side, and distinctive black shoes with a wavy white stripe.

[Davis] exits Dezzy's with his hands in his jacket's central pocket, walks by the victims, abruptly turns while pulling out a semi-automatic pistol and fires multiple shots at the men, striking five members of the group and a Ford Focus parked nearby. The men quickly scatter, except for the decedent, who falls head-first into the sidewalk and collapses onto the ground. Darryl Boggs ["Boggs"], a bystander, jumps out of his parked Ford Focus and begins shooting at [Davis], using a handgun with an extended magazine. [Davis] flees the scene, turning east down Allengrove Street and then north on Darrah Street, returning to the parked red Saturn Vue with its lights still on. [Davis] gets in the vehicle and drives away. Less than 20 minutes after the shooting, [Davis] is seen driving the same red Saturn wearing the same clothes pulling into the ambulance bay of Frankford Jefferson Hospital and is treated for gunshot wounds to his right leg and left arm.

Police investigators recovered forty-eight nine-millimeter fired cartridge casings ("FCC's") from two different weapons from

the scene. Ballistics testing determined that sixteen of the FCC's were fired from one weapon, while the other thirty-two FCC's were fired from a second weapon.

The red Saturn Vue was found unoccupied at the Frankford Jefferson Hospital emergency room drop-off area. Pursuant to a search warrant for the vehicle, police recovered a single black Adidas sneaker from the driver's side floor of the vehicle, paperwork in the glove compartment identifying [Davis]'s mother, Kimberly Smith, as the registered owner of the vehicle, and blood samples from stains on the center console and driver's seat. The blood from the stains was tested and the DNA matched a DNA sample provided by [Davis]. Inside the hospital, a bag of property was recovered of clothing taken from [Davis].

Trial Court Opinion, 4/29/2024, at 2-3 (footnote omitted).

On October 27, 2020, [Davis] was arrested and charged with murder and related offenses, as well as four counts of aggravated assault. On September 13, 2023, a jury convicted [Davis] of [first-degree murder], firearms not to be carried without a license …, carrying firearms in public in Philadelphia …, [PIC], and four counts of aggravated assault. Sentencing was deferred for pre[]sentence investigation and mental health reports. [The trial court] received a pre[]sentence investigation report, but on November 15, 2023, [Davis] refused to participate in the mental health evaluation.

On December 4, 2023, [the trial court] sentenced [Davis] to life imprisonment without the possibility of parole for [first-degree murder], concurrent sentences of one-and-a-half years to three years of incarceration for firearms not to be carried without a license, one to two years of incarceration for carrying firearms in public in Philadelphia, and five to ten years of incarceration for each count of aggravated assault. No further penalty was imposed for [PIC].

On December 13, 2023, [Davis] filed a timely post-sentence motion, which [the trial court] denied on March 1, 2024. [Davis] filed a timely notice of appeal and a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b).

*Id.* at 1-2 (footnote and unnecessary capitalization omitted).

Davis presents the following issues for review:

I. Whether [Davis'] convictions for murder and aggravated assault were based upon insufficient evidence of the identity of the shooter and of [Davis'] intent where the Commonwealth's evidence consisted of an unclear composite video that merely demonstrated that [Davis] reacted to the movements and unrecorded words of the alleged victims and did not premeditate to harm others?

II. Whether [Davis'] convictions are against the weight of the evidence where the evidence established that [Davis] was shot and wounded in an unrelated incident in the 1600 block of Granite Avenue and that [Davis] was not present at the 4900 block of Frankford Avenue where the murder and assaults occurred, where [Davis] explained to Detective Crone that he was shot going into a store, where the alleged aggravated assault victims did not appear to testify at the trial, where the ballistician could not say that all the FCC's found on Frankford Avenue were fired during the same incident and where [Davis'] blood was not found at the crime scene?

Davis' Brief at 6 (issues reordered for ease of review).

In his first issue, Davis challenges the sufficiency of the evidence to support his first-degree murder and aggravated assault convictions on two bases. *See id.* at 20-22. First, Davis argues that the video of the shooting that the Commonwealth presented at trial was insufficient to identify him as the shooter. *Id.* at 20-21. Davis claims that the Commonwealth did not present any eyewitness testimony identifying him as the shooter or any ballistics evidence linking him to this shooting, as Davis maintains he was shot during a different shooting on the night in question on the 1600 block of Granite Avenue in Philadelphia. *Id.* Second, to the extent the video does sufficiently identify Davis as the shooter, Davis asserts that it did not provide

evidence that he acted with the necessary specific intent to kill Hargrove to sustain a conviction of first-degree murder or that he recklessly attempted to cause serious bodily injury to the four other victims of the shooting. *Id.* at 21-22. Davis maintains that he was merely reacting to those individuals shooting at him first. *Id.* at 22.

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (quotation marks and citation omitted). Furthermore, "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

Our Supreme Court has set forth the elements of first-degree murder as follows: "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." *Commonwealth v. Martin*, 101 A.3d 706, 718 (Pa.

2014) (citing 18 Pa.C.S. § 2502(a)).  The Crimes Code defines specific intent as follows:

> (1) A person acts intentionally with respect to a material element of an offense when:
>
> > (i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and
> >
> > (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S. § 302(b)(1); *Commonwealth v. Palmer*, 192 A.3d 85, 88 (Pa. Super. 2018).

"Specific intent may be formed in an instant … and it can be discerned from the conduct and attending circumstances that show the perpetrator's state of mind." *Commonwealth v. Newton*, 318 A.3d 133, 139 (Pa. Super. 2024).  "The law does not require a lengthy period of premeditation.  Indeed, the period of reflection required for premeditation to establish the specific intent to kill … can be formulated in a fraction of a second.  Premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death." *Commonwealth v. Anderson*, 323 A.3d 744, 753 (Pa. 2024).

Additionally, "[a] factfinder may presume the intent to kill based on the accused's use of a deadly weapon on a vital part of the victim's body or in the general area in which vital organs are located." *Newton*, 318 A.3d at 139 (quotation marks and citation omitted).  "The deadly weapon presumption is

a presumption of fact founded on human experience, [as] one does not normally use a deadly weapon on a vital part of another's body unless he intends to kill." *Id.* (quotation marks and citation omitted).

"A person is guilty of aggravated assault if he … attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). "Serious bodily injury" is any "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of function of any bodily member or organ." 18 Pa.C.S. § 2301. "To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice, a crucial element of aggravated assault." *Commonwealth v. Riggs*, 63 A.3d 780, 784-85 (Pa. Super. 2012) (citation omitted). Malice consists of a "wickedness of disposition, hardness of heart, cruelty, recklessness of consequences and a mind regardless of social duty, although a particular person may not be intended to be injured." *Id.* (citation omitted). Additionally, "malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." *Commonwealth v. Santos*, 876 A.2d 360, 364 (Pa. 2005) (citation omitted, formatting altered).

The record reflects that at trial, the Commonwealth presented a compilation video of the shooter's movements and actions prior to, during, and immediately after the shooting that resulted in Hargrove's death and injury to four other individuals. *See* N.T., 9/12/2023, Commonwealth Exhibit 70. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the video revealed an individual who would later be identified as Davis, park his Saturn Vue roughly a block from where the shooting occurred, exit the car with its lights on, and head in the direction of the shooting location. *Id.* On his way to the shooting, Davis stepped inside two storefronts and in one of those stores, adjusted his waist area. *Id.* Davis then walked past a group of individuals when he suddenly, and without warning, fired several shots at close range into the group standing on the sidewalk. *Id.* He shot Hargrove in the head, killing him, and shot four other victims as they began to flee after Hargrove had already collapsed to the ground. *Id.* The medical examiner testified that the gunshot wound to the head was the cause of Hargrove's death. N.T., 9/12/2023, at 23. The sole act of aggression made towards Davis occurred after he began shooting, when Boggs, whose vehicle Davis struck with gunfire, began shooting at Davis in an apparent response to Davis' shooting. N.T., 9/12/2023, Commonwealth Exhibit 70.

After the shooting, the video showed Davis immediately returning to the Saturn Vue with the firearm in his hand visible. *Id.* Davis then drove himself

to Frankford Jefferson Hospital where he received treatment for gunshot wounds to his arm and leg. *Id.* Blood samples police recovered from the Saturn Vue belonged to Davis and Davis' mother, Kimberly Smith, is the registered owner of that vehicle. N.T., 9/12/2023, at 49-59, 149.

The record further reflects that the compilation video shows that the shooter was wearing the exact same clothing the hospital removed from Davis on the night in question. N.T., 9/12/2023, Commonwealth Exhibit 70. Specifically, the shooter was wearing navy blue Adidas athletic pants with a white or light-colored stripe down the side, black sneakers with a white stripe, and red underwear. *Id.* Indeed, there is no mistaking that the video revealed the shooter to be wearing red underwear, that Davis was wearing red underwear as emergency medical personnel wheeled Davis into the hospital, and that medical personnel removed red underwear from Davis while he was at the hospital. *See id.*

Thus, contrary to Davis' assertion, the record contains evidence clearly identifying him as the shooter. Nor does the record support his claim that he was somehow acting in self-defense. With respect to first-degree murder, the record contains evidence that Davis acted with the specific intent to kill because Davis shot Hargrove at close range and in the head, a vital part of the body. *See Anderson*, 323 A.3d at 754 (explaining that the head is a vital part of the body). Thus, the jury could infer that Davis acted with the specific

intent to kill, as a perpetrator can form the specific intent to kill in an instant. *See Newton*, 318 A.3d at 139.

Likewise, for his convictions of aggravated assault, the record contains evidence that Davis acted with recklessness with respect to the four other shooting victims. As this Court has held regarding aggravated assault convictions, "[t]he jury could find under the totality of the circumstances that [the appellant] fired into the group of people with intent to inflict serious bodily injury upon someone within that group." *Palmer*, 192 A.3d at 96.

Accordingly, based on the foregoing, viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, the evidence the Commonwealth presented at trial plainly identified Davis as the shooter, that Davis acted with the specific intent to kill Hargrove, and that Davis' actions were reckless as to the four other shooting victims. *See Miller*, 172 A.3d at 640. We therefore conclude that the evidence was sufficient to sustain Davis' convictions of both first-degree murder and aggravated assault.

For his second issue, Davis argues that the verdict was against the weight of the evidence. *See* Davis' Brief at 16-19. Specifically, Davis argues that the compilation video was of too low quality to identify Davis as the shooter and that the Commonwealth failed to disprove that he had been shot at an unrelated shooting that occurred at the 1600 block of Granite Avenue in Philadelphia. *Id.* at 16-18. Davis also asserts that the verdict was against the weight of the evidence because none of the four surviving victims of the

shooting testified at trial or identified Davis as the shooter. *Id.* at 18. Finally, Davis contends that the verdict was against the weight of the evidence because "the ballistician could not say with any certainty when the ballistics evidence deposited at the … shooting scene occurred and therefore could not positively link it to the events that led to Hargrove's death" and because police did not recover any of Davis' DNA from the scene of the shooting. *Id.* at 18-19.

The following legal principles apply to a trial court's consideration of a challenge to the weight of the evidence supporting a conviction:

> An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.
>
> Thus, to allow an appellant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the trial court.

*Commonwealth v. Juray*, 275 A.3d 1037, 1046-47 (Pa. Super. 2022) (quotation marks and citations omitted).

Our standard of review for weight of the evidence claims, however, differs from that of the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court' s conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 1047 (citation omitted).

In rejecting Davis' weight claim, the trial court explained:

The jury's verdict is not so contrary to the evidence as to shock one's sense of justice. The evidence of [Davis'] guilt was overwhelming. As discussed above, the evidence established that [Davis] parked his car around the corner a block away, leaving the lights and possibly the engine on, walked to where the victims were hanging out with his firearm concealed in his jacket, pulled out the firearm and shot sixteen times at the five men. Accordingly, [Davis'] claim that his conviction is against the weight of the evidence fails.

Trial Court Opinion, 4/29/2024, at 7.

As explained above, the compilation video the Commonwealth presented at trial more than convincingly identifies Davis as the individual who killed Hargrove and shot four other individuals. *See* N.T., 9/12/2023, Commonwealth Exhibit 70. While there may have been another shooting that occurred at the 1600 block of Granite Avenue in Philadelphia on the night in question, the Commonwealth was not required to disprove that Davis was shot during that shooting. Further, Davis does not point to any evidence (and our

review of the evidence presented at trial reflects there was none) linking him to the shooting that occurred at the 1600 block of Granite Avenue.

The Commonwealth was only required to prove beyond a reasonable doubt that Davis committed the shooting that occurred in this case. ***See Commonwealth v. Sami***, 243 A.3d 991, 998 (Pa. Super. 2020) (explaining that the Commonwealth must only prove beyond a reasonable doubt that the defendant has committed the particular crime of which he is accused). As our review of Davis' challenges to the sufficiency of the evidence of his first-degree murder and aggravated assault convictions concluded, there was ample evidence that Davis was perpetrator of the shooting in question. Accordingly, we conclude that the trial court did not abuse its discretion in determining that the verdict was not against the weight of the evidence.

As we find no merit to Davis' sufficiency and weight of the evidence claims, he is not entitled to relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/22/2025

- 14 -